Service Electric Company, Inc., et al. [1] v. Commissioner. Service Electric Co. v. Commissioner
Docket Nos. 3040-62 - 3041-62; 3205-62 - 3458-62.
United States Tax Court
T.C. Memo 1965-176; 1965 Tax Ct. Memo LEXIS 156; 24 T.C.M. (CCH) 931; T.C.M. (RIA) 65176; June 28, 1965
deQuincy V. Sutton, Greater Mississippi Life Bldg., Meridian, Miss., for the petitioners. Robert G. Faircloth, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for the years and in the amounts as follows: Fiscal year
Deficiency
Additions to tax
ended
in
under Sec. 6653(a)
Docket
Petitioner
March 31
income tax
I.R.C. 1954
number
3040-62
Service Electric Company,
1957
$ 90.56
$ 4.53
Inc.
1958
433.61
21.68
1959
1,611.88
80.59
1960
1,400.87
70.04
3041-62
Aliice Edwards
1960
$1,560.67
$ 78.03
3205-62
James H. Edwards
1960
526.57
26.33
3458-62
James H. and Alice Edwards
1957
2,310.15
115.50
1959
921.43
46.07
*157 The issues for decision are: (1) Whether Service Electric Company's income for each of its taxable years ended March 31, 1957, 1958, 1959, 1960, and 1961 was understated by amounts of deposits in the bank accounts of James H. and Alice Edwards which respondent was unable to identify, whether such amounts constituted dividend income to the extent of the earnings and profits of Service Electric Company to James H. Edwards for his taxable years 1957, 1959, and 1960, and whether such unidentified deposits for the last 9 months of 1960 constituted an understatement of taxable income for Alice Edwards for the year 1960. (2) To what extent, if any, were sales of two operations as sole proprietorships by Alice Edwards unreported for the year 1960. The deficiencies in the taxable income of Service Electric Company, Inc., for its fiscal years ended March 31, 1957 and 1958 result from the disallowance of net operating losses carried back from that corporation's taxable year ended March 31, 1959, which claimed net operating loss carryback had been previously tentatively allowed with a resulting tax refund of $90.56 for its fiscal year ended March 31, 1957, and $433.61 for its fiscal year *158 ended March 31, 1958. Respondent recognizes that for the taxable year 1960 in which separate returns were filed by James H. Edwards and Alice Edwards, he has duplicated the inclusion of the unidentified deposits for the period April 1, 1960, through December 31, 1960, in the income of two of petitioners. These amounts are included in the fiscal year of Service Electric Company, Inc., ended March 31, 1961, and are also included as additional income of Alice Edwards through increased sales of her sole proprietorships. Respondent concedes that these determinations are in effect alternative in that if the amounts did constitute income of Service Electric Company, Inc., the same amounts did not constitute income of Alice Edwards. Certain adjustments in the deficiency notice have been conceded by petitioners, and on brief respondent has conceded that certain items set forth in his notice of deficiency as unidentified deposits were identified sufficiently at the trial to show that they did not constitute income to either Service Electric Company, Inc., or James H. Edwards or Alice Edwards. Findings of Fact Some of the facts have been stipulated and are found accordingly. James *159 H. and Alice Edwards, husband and wife residing in Meridian, Mississippi, filed joint Federal income tax returns for the calendar years 1957 and 1959 with the district director of internal revenue in Jackson, Mississippi. For the calendar year 1960, James H. Edwards and Alice Edwards, each filed a separate income tax return for the calendar year with this same district director of internal revenue. Service Electric Company, Inc. (hereinafter referred to as Service Electric), a Mississippi corporation organized on April 1, 1955, with its principal office located in Meridian, Mississippi, filed its corporate Federal income tax returns for its fiscal years ending March 31, 1957, 1958, 1959, 1960, and 1961 with the district director of internal revenue at Jackson, Mississippi. James H. Edwards (hereinafter referred to as James), shortly after leaving the military service in 1946 began operating an electrical contracting business as a sole proprietorship. Sometime in the late 1940's this same business was conducted by James and another as a partnership, and it was this business which was taken over by Service Electric when it was organized with three original stockholders, who in addition *160 to James were D. W. Brown and Thomas Blizard. From the date of its organization throughout the years here involved, James was president and a stockholder of Service Electric and managed its business affairs. By March 31, 1961, James had acquired all of the outstanding common stock of Service Electric. Alice Edwards (hereinafter referred to as Alice) during the taxable years 1957 through 1960 owned and operated a dry cleaning establishment located in Meridian, Mississippi, a sole proprietorship known as Edwards Cleaners. During the taxable year 1959 she formed another dry cleaning establishment in Meridian, Mississippi, which was also operated as a sole proprietorship during that year and the year 1960 and was known as Friendly Cleaners. Service Electric filed claims for refund dated September 25, 1959, respecting its taxable years ended March 31, 1957, and March 31, 1958. These claims were based upon the assertion by Service Electric that it had sustained a net operating loss for its taxable year ended March 31, 1959, in the amount of $1,747.24. During the examination of this claim for refund and also of the income tax returns of James and Alice and of the returns of Service *161 Electric for its fiscal years 1959 through 1961, respondent's agents examined the individual savings and checking accounts of James and Alice in the First National Bank of Meridian. During each of the years 1957 through 1960 there were various deposits in these accounts which respondent's agents were unable to identify and certain other deposits which the agents were unable to identify as nonincome items or items of reported income which will hereinafter be referred to as unidentified deposits. The following schedules show the amounts and dates of the unidentified deposits in the accounts of James and Alice indicating the account to which such deposits were made: James H. Edward's Individual Savings Account No. X3679
Date
Amount
Date
Amount
Date
Amount
1957
1958
1959
Apr. 25
$5,400.00
Jan. 15
$ 600.00
Jan. 8
$ 800.00
Oct. 9
1,560.00
Jan. 21
103.42
Jan. 26
973.00
Oct. 17
820.00
Feb. 3
1,360.00
Feb. 9
100.00
Nov. 20
400.00
Apr. 24
1,693.40
1960
Dec. 5
100.00
Sept. 9
870.00
Nov. 15
$3,277.50
James H. and Alice Edwards' Joint Savings Account No. X4867
Date
Amount
1959
Jan. 6
$ 50.00
Jan. 8
157.10
Jan. 12
50.00
Jan. 19
50.00
Jan. 26
50.00
Feb. 2
51.00
Feb. 9
50.00
Feb. 17
50.00
Feb. 24
50.00
Mar. 2
50.00
Mar. 9
50.00
Mar. 16
62.00
Mar. 23
50.00
Mar. 30
62.57
Apr. 6
$ 50.00
Apr. 14
50.00
Apr. 20
70.00
Apr. 27
50.00
May 4
50.56
May 11
50.00
May 18
50.00
June 8
104.60
June 15
120.00
June 22
40.00
July 13
67.00
Sept. 14
45.50
Oct. 12
30.00
Oct. 19
219.00
Oct. 26
100.00
Nov. 2
$106.00
Nov. 6
25.00
Nov. 9
66.00
Nov. 30
74.90
Dec. 14
100.00
Dec. 21
150.00
1960
Jan. 4
$100.00
Jan. 18
53.00
Feb. 8
210.88
May 31
200.00
Nov. 3
37.00
May 11
610.00
Dec. 27
88.00
*162 James H. and Alice Edwards' Joint Checking Account
Date
Amount
Date
Amount
Date
Amount
1958
1959
1960
Jan. 2
$100.00
Jan. 8
$100.00
Jan. 5
$100.00
Feb. 4
40.10
Jan. 12
58.00
Jan. 6
40.00
Feb. 10
133.66
Jan. 15
500.00
Jan. 11
100.00
Feb. 17
113.55
Jan. 19
3.04
Jan. 18
103.04
Feb. 24
123.55
Feb. 24
100.00
Feb. 23
462.21
Mar. 10
37.99
Mar. 2
110.00
Mar. 7
100.00
Mar. 20
60.00
Apr. 1
110.80
Mar. 14
148.62
Mar. 31
148.90
May 4
100.00
Mar. 21
187.46
Apr. 14
115.19
May 25
110.00
Mar. 29
100.00
Apr. 15
65.67
May 28
200.00
Apr. 4
100.00
May 2
151.85
June 3
100.00
Apr. 11
75.00
May 5
32.55
June 15
400.00
Apr. 18
100.00
May 14
312.59
July 6
50.00
May 2
14.00
May 19
118.38
Sept. 14
75.00
May 16
108.00
June 2
20.00
Oct. 14
100.00
June 6
21.00
June 9
60.00
Oct. 19
100.00
July 7
75.00
Nov. 11
53.85
Aug. 15
100.00
Dec. 1
30.00
Oct. 6
100.00
Dec. 15
20.00
Oct. 7
153.40
Oct. 24
114.95
Nov. 1
65.00
Nov. 3
70.00
Nov. 7
40.00
Nov. 14
500.00
Nov. 16
70.00
Nov. 28
89.12
Dec. 5
70.00
Dec. 19
125.00
*163 The net income of Service Electric as reported on its corporate income tax returns for its fiscal years ended March 31, 1957, through 1961 was as follows: Fiscal year
ended March 31
Amount
1957
$ 301.87
1958
[2] 11,872.30
1959 (loss)
(1,747.24)
1960
1,122.43
1961 (loss)
(10,539.51)
When Service Electric was organized in 1955, it was understood that the corporation would pay James for property which he turned over to the corporation and on April 12, 1957, he received a check from Service Electric for $22,174 representing payment for this property and certain advances to the corporation. The amount of this payment came from the proceeds of a loan made by the corporation. None of the funds represented by this $22,174 check is included by respondent in the unidentified deposits of James and Alice. James had lent $1,800 each to D. W. Brown and Thomas Blizard around the time Service Electric was formed with which to pay for 18 shares of Service Electric's stock. Shortly thereafter he lent W. J. Brown $1,800 with which to purchase stock. In April 1957 each of these individuals repaid James the $1,800 *164 that had been loaned to him, and the deposit to James' individual savings account No. X3679 on April 25, 1957, of $5,400 was from the repayment of the three $1,800 amounts and did not represent taxable income to either Service Electric, James, or Alice. On June 18, 1957, W. J. Brown sold his shares of stock in Service Electric to the corporation. The amount of $3,277.50 deposited in James' individual savings account on November 15, 1960, represented repayment of a loan which James individually had made, secured by deed of trust, to a Howard Miller in the amount of $3,000 with interest of $277.50. The amount of $3,000 did not constitute income to Service Electric, James, or Alice, and the $277.50 interest did not constitute income to Service Electric but did represent interest income to James in 1960. Of the deposit to James' individual savings account No. X3679 on October 9, 1957, of $1,560, the amount of $1,000 was from a repayment of a loan made by James in 1956 to a W. J. Brown of Mobile, Alabama to enable Brown to buy a lot. This $1,000 did not represent income to Service Electric, James, or Alice. The deposit of $400 to this same individual account of James' on November 20, 1957, represented *165 a repayment of a loan made by James to a man named Fontaine in 1954 and did not represent income to Service Electric, James, or Alice. Of the deposit on December 5, 1957, of $100 in this same account of James', $75 represented the proceeds from repayment of a loan James had previously made to Walter Hunnicut and did not constitute income to Service Electric, James, or Alice. On September 5, 1957, James lent $1,600 to James V. McKay to enable McKay to purchase an automobile, and this amount was repaid to James on February 3, 1958. The deposit on February 3, 1958, in James' individual savings account No. X3679 in the amount of $1,360 came from the proceeds of this repayment of loan and did not constitute income to Service Electric, James, or Alice. On January 8, 1958, James lent Gerald Alexander $1,700 which was repaid on April 18, 1958. From the proceeds of this repayment of loan, James made the deposit of $1,693.40 on April 24, 1958, to his individual savings account No. X3679, and this deposit does not represent income to Service Electric, James, or Alice. On January 6, 1959, Coy Lee Myers repaid James an amount of $800 which James had previously loaned him to open a filling *166 station, and this $800 represented the deposit on January 8, 1959, to James' individual savings account, and did not represent taxable income to Service Electric, James, or Alice. On January 19, 1959, Earl Cherry repaid to James $1,000 of a sum of $2,500 which James had loaned him in January 1957, and the deposit to James' individual savings account No. X3679 on January 26, 1959, of $973 was from this loan repayment of $1,000 and did not represent income to Service Electric, James, or Alice. During the years 1957, 1958, and 1959, James made other collections on loans he had made to individuals. Sometimes he would lend money to others from loans thus collected. At times James would place the funds collected in a safe in the office of Service Electric, and the cash in this safe would form the source of other loans made by him. During the years here involved James kept between $5,000 and $8,000 in cash in this safe. The individuals to whom James made loans were either personal friends or business associates. The dates of repayment of a number of the loans made by James cannot be identified with deposits to James' individual savings account or either of the joint accounts of James *167 and Alice which respondent determined to be unidentified. When Service Electric Company of Alabama, a different company from Service Electric here a petitioner, was opened in Pritchard, Alabama, James advanced $3,338.18 more to the company than his stated investment in the company and subsequently was repaid this amount. Also in 1956 when James and a group of associates were considering forming a company to be known as Electric Specialties Company, James advanced $10,000 to his associates to form this company. The money was placed in an account under the name of Electric Specialties Company, and when it was decided not to form the company the money was returned to James by check. Neither the $3,338.18 repayment to James by Service Electric Company of Alabama nor the $10,000 return of money advanced to form Electric Specialties Company can be connected with any deposit in any of the three accounts which respondent has listed as unidentified deposits. Each of these accounts had other deposits made thereto which respondent's agents were able to identify during their investigation and did not therefore include in the list of unidentified deposits. During part of 1959, James was working *168 for the Service Electric Company of Alabama in Mobile and drawing a weekly check of $150 to cover expenses and salary. He would cash these checks and spend whatever he needed for expenses in Mobile, and when he came back to Meridian on the weekend would give the balance to his wife to deposit in their joint savings account No. X4867. He was making an effort at the time to save at least $50 a week. James reported wages from Service Electric Company of Mobile, Alabama on his 1959 income tax return of $1,860 with income tax withheld of $153. The following deposits to the joint savings account No. X4867 in the names of James and Alice were amounts from checks issued to James by Service Electric and Service Electric of Alabama, which amounts either have been reported by James on his 1959 income tax return or were in reimbursement of expenses. These amounts do not represent income to Service Electric or unreported income of James or Alice. Date
Amount
Jan. 6, 1959
$ 50.00
Jan. 12, 1959
50.00
Jan. 19, 1959
50.00
Jan. 26, 1959
50.00
Feb. 2, 1959
51.00
Feb. 9, 1959
50.00
Feb. 17, 1959
50.00
Feb. 24, 1959
50.00
Mar. 2, 1959
50.00
Mar. 9, 1959
50.00
Mar. 16, 1959
62.00
Mar. 23, 1959
50.00
Mar. 30, 1959
62.57
Apr. 6, 1959
50.00
Apr. 14, 1959
50.00
Apr. 20, 1959
70.00
Apr. 27, 1959
50.00
May 4, 1959
50.56
May 11, 1959
50.00
May 18, 1959
50.00
June 22, 1959
40.00
July 13, 1959
67.00
Sept. 14, 1959
45.50
Oct. 26, 1959
100.00
Nov. 6, 1959
25.00
Nov. 9, 1959
66.00
Nov. 30, 1959
74.90
Dec. 14, 1959
100.00
*169 Twenty-five dollars of the $30 deposit on October 12, 1959, to James and Alice's joint savings account No. X4867 and the $200 deposited to this account on May 31, 1960, represented withdrawals from James' and Alice's joint checking account deposited to the savings account and do not represent income to Service Electric, James, or Alice. For the calendar year 1957, James reported on his income tax return total wages from Service Electric Company, Inc., Meridian, Mississippi, of $5,283.40 with income tax withheld of $492.90. For the calendar year 1959 he reported wages on his income tax return from Service Electric Company, Inc., Meridian, Mississippi of $10,368.89 with income tax withheld of $1,571.36, and for the year 1960, reported wages from Service Electric Company, Inc., Meridian, Mississippi, of $3,000 with Federal income tax withheld of $319.40 and wages from Service Electric Company, Inc., Mobile, Alabama, of $2,061.80 with Federal income tax withheld of $232. In each of the years 1958 through 1960, James was doing some traveling in connection with estimating work for Service Electric for which he drew expense reimbursement checks. During the calendar years 1959 and 1960 *170 Alice withdrew certain funds from the joint checking account she had with James and deposited the amounts to the business accounts in the names of Edwards Cleaners and Friendly Cleaners. At least $1,172 was so withdrawn and deposited to these business accounts by Alice in 1959 $375and in 1960. Some of the unidentified deposits to the joint checking account of James and Alice during each of the years 1958, 1959, and 1960 came from the salary and expense checks received by James from Service Electric. Some of these unidentified deposits came from amounts which had been withdrawn by Alice for use of either Edwards Cleaners or Friendly Cleaners which were replaced in the account from the accounts of these businesses. For the period January 1, through March 31, 1958, a total of $354.20 of such deposits came from these sources. For the period April 14, 1958, through December 15, 1958, a total of $381.47 came from these sources and for the period January 8, 1959, through March 31, 1959, a total of $200 came from these sources. For the period April 1, 1959, through December 31, 1959, a total of $250 came from these sources. For the period January 5, 1960, through March 31, 1960, a total *171 of $203.04 came from these sources and for the period April 11, 1960, through December 31, 1960, a total of $308 came from these sources. Respondent in his notice of deficiency determined that the total unidentified deposits in the individual account of James and the joint accounts of James and Alice constituted additional income from sales of Service Electric and recomputed Service Electric's income accordingly. This resulted in the disallowance of carryback adjustments previously tentatively allowed for the fiscal years 1957 and 1958 to that company and deficiencies for the fiscal years ended March 31, 1959 and 1960. The amount of reported loss for the fiscal year 1961 was reduced so as to reduce the available carryback from that year. The total amount of underpayment of tax by Service Electric for its fiscal year 1958 determined by respondent was $2,462.99 but the deficiency determined was only $433.61 since respondent determined that the assessment and collection of any deficiency for this year, other than that resulting from the prior erroneous allowance of a net operating loss carryback, was barred by the statute of limitations. Respondent determined that to the extent of earnings *172 and profits of Service Electric the total amount of these unidentified deposits constituted dividends to James includable in his income for each of the calendar years 1958, 1959, and 1960 and to the extent that such unidentified deposits exceeded the earnings and profits of Service Electric, respondent determined that after subtracting the total amount of James' investment in capital stock of Service Electric, the balance constituted capital gain to James. Respondent determined that Alice had income from increased sales of Edwards Cleaners and Friendly Cleaners of $9,036.73 for the year 1960 and decreased allowable expenses of these operations by $362.96, making total additional income from Edwards Cleaners and Friendly Cleaners of $9,399.69. Of this amount of increased sales determined by respondent, $6,202.97 came from the unidentified deposits of James' savings account, Alice's and James' joint savings account and Alice's and James' checking account. Ultimate Facts 1. Of the increased sales of $9,036.73 determined for Friendly Cleaners and Edwards Cleaners to be includable in Alice's income for the year 1960, an amount of $375 represented amounts which Alice advanced from *173 her own account to Friendly Cleaners and Edwards Cleaners and did not constitute income to Alice; the amount of $6,202.97 represented unidentified deposits to accounts of James and Alice which did not constitute income to Alice, leaving total additional sales of Edwards Cleaners and Friendly Cleaners for the year 1960 omitted from Alice's income for that year of $2,458.76. 2. The total unidentified deposits in James' individual savings account and in the joint savings and checking accounts of James and Alice, which we have not found to be accounted for either by nonincome items or items already reported as income, constituted additional sales of Service Electric properly includable in that company's income, and to the extent of earnings and profits of that corporation includable in James' income as dividends. To the extent that these amounts exceed the earnings and profits of the corporation, the difference, to the extent, if any, it exceeds James' basis in this stock, constitutes long-term capital gain to him. Opinion Petitioners suggest the presence of but have not argued certain issues. These are whether respondent was justified with respect to a second investigation of the *174 tax liability of Service Electric for the years 1957 and 1958, whether the deficiency determined by respondent against Service Electric for 1958 was barred by the statute of limitations, and whether respondent's determination was arbitrary. Assuming that petitioners have not abandoned these three suggested issues, we conclude that their position cannot be sustained. There was no second investigation of the books of Service Electric in the instant case except in connection with a claim for refund based on a tentatively allowed carryback with deficies being determined only of the amounts previously tentatively allowed as a refund. Such an investigation is not of the nature to which section 7605(b) of the Internal Revenue Code of 1954[3] has reference. In any event, even if this examination did constitute a second investigation, it was made with the knowledge of the taxpayer and without any objection thereto being made. Under these circumstances a notice of deficiency based on such an examination would not be invalid. M. O. Rife, Jr., 41 T.C. 732 (1964), on appeal (C.A. 5, July 23, 1964).
*175 The assertion of the deficiency for the year 1958 to the extent that it results from the previous tentative allowance of a carryback loss is not barred, since the provisions of section 6501(h) of the Internal Revenue Code of 1954 make the period of limitation for the assessment of such a deficiency the same as for the year the net operating loss was sustained and the notice here was sent within that period. Where respondent's agents, as here, have made unsuccessful efforts to obtain adequate books of each of the petitioners, respondent is not arbitrary in computing tax liability by increasing the reported income of the various petitioners by deposits placed in the individual petitioners' bank accounts. The remaining issue is purely factual. In our findings of fact we have set forth in detail our determination of the various deposits which were held by respondent to be unidentified which were adequately accounted for by the evidence at the trial. In fact some of the items which we have determined to be adequately accounted for are items conceded by respondent on brief. The additions to tax determined by respondent under section 6653(a) of the Internal Revenue Code *176 of 1954 relating to any underpayment of income tax which is in part due to negligence or intentional disregard of rules and regulations is apparently not contested by petitioners aside from their contesting of the deficiencies as determined. Petitioners offered no evidence to show error in respondent's determination of this addition and in fact the lack of adequate records from which a proper tax determination could be made was apparent from the evidence offered at the trial. We sustain respondent's addition to the tax which may be recomputed on the basis of the deficiencies, if any, which result from a recomputation under Rule 50, based on the amount of unidentified deposits as determined by respondent which petitioners failed to prove were either from sources which did not constitute income or sources of income which had been reported by them. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Alice Edwards, Docket No. 3041-62; James H. Edwards, Docket No. 3205-62; and James H. and Alice Edwards, Docket No. 3458-62.↩
2. After claimed net operating loss of $2,868.48.↩
3. Sec. 7605(b)↩ Restrictions on Examination of Taxpayer. - No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.